**CASE NO. 23-1808**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

United States ex rel. Jon H. Oberg, *Plaintiff*,
and
Michael Camoin, *Movant-Appellant*,

v.

Nelnet, Inc.; Brazos Higher Education Service Corporation; Brazos
Higher Education Authority, Inc.; Nelnet Education Loan Funding, Inc.,
*Defendants-Appellees*,

and

Vermont Student Assistance Corporation; Pennsylvania Higher
Education Assistance Agency; Kentucky Higher Education Student
Loan Corporation; Arkansas Student Loan Authority, *Defendants*.

---

ON APPEAL FROM
The United States District Court for the Eastern District of Virginia at Alexandria
No. 1:07-CV-00960-CMH-JFA
Hon. John F. Anderson, USMJ

---

**PETITION FOR REHEARING EN BANC OF APPELLEES NELNET, INC.
AND NELNET EDUCATION LOAN FUNDING, INC.**

---

SUBMITTED BY:

Ronald S. Connelly
Larry S. Gondelman
Powers Pyles Sutter & Verville PC
1250 Connecticut Ave. NW, Eighth Floor
Washington, DC 20036
202-466-6550
Ron.Connelly@PowersLaw.com
*Attorneys for Appellees*
July 2, 2024

**TABLE OF CONTENTS**

STATEMENT PURSUANT TO FED. R. APP. P. 35(b)(1) .......................................1

LEGAL BACKGROUND ..........................................................................2

PROCEDURAL BACKGROUND..............................................................4

ARGUMENT ............................................................................................7

CONCLUSION .......................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) ...........................................8

*Courthouse News Serv. v. Shaefer*, 2 F.4th 318 (4th Cir. 2021)................................2

*Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014)...................................... 3, 9, 12

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)....................................3

*In re Policy Management Systems Corp.*, 1995 WL 541623
   (4th Cir. Sept. 13, 1995) .............................................................1, 10, 11

*In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283
   (4th Cir. 2013)................................................................................4, 11

*Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572
   (E.D. Va. 2009) ...........................................................................3

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ............................................2

*Press-Enter. Co. v. Superior Ct. of Cal. for Riverside Cnty.*,
   478 U.S. 1 (1986) ....................................................................... 3, 8, 10

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ...................................3

*Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249 (4th Cir. 1988)........................8, 9

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995)...........................................12

**Rules**

Fed. R. App. P. 35.......................................................................................1

## STATEMENT PURSUANT TO FED. R. APP. P. 35(b)(1)

This Court should grant en banc review of the panel's decision because it conflicts with this Court's precedent in *In re Policy Management Systems Corp.*, 1995 WL 541623 (4th Cir. Sept. 13, 1995) ("*In re Policy Management*") and because the panel unduly constrains the authority of district courts to seal confidential documents that play no role in the court's decision-making. Appellees Nelnet, Inc. and Nelnet Education Loan Funding, Inc. (collectively, "Nelnet") respectfully petition this Court to rehear this case en banc, pursuant to Fed. R. App. P. 35 because en banc review is needed to maintain decisional uniformity and because the panel's intrusion on the authority of the district court to manage litigation presents a question of exceptional importance.

The panel of this Court reversed the decision of the district court denying a motion by a non-party, Appellant Camoin, to unseal documents filed in conjunction with motions for summary judgment. The panel did so despite its finding that Camoin did not participate in the district court proceedings prior to requesting the documents and despite the district court's finding that the documents at issue played no adjudicative role in the case because the district court neither considered nor ruled on the motions.

The panel's blanket approach conflicts with *In re Policy Management* and will allow virtually unfettered access to all documents filed in conjunction with

1

motions for summary judgment, regardless whether those documents play any role in the adjudicative process. This holding would open the summary judgment process to tactical considerations that are irrelevant to the motions and impose on the party whose documents had been sealed the heavy burden of establishing a compelling government interest in protecting the documents even if the court does not rule on the motion.

The panel acknowledged that Camoin, a non-party, did not satisfy the standard for non-party standing. Nonetheless, the panel took mandamus jurisdiction. Camoin was not entitled to this extraordinary remedy because he has no clear and indisputable right to the sealed documents. Accordingly, mandamus was improper, the panel lacked jurisdiction, and Camoin's appeal must be dismissed.

## LEGAL BACKGROUND

The First Amendment provides the public with a limited right to inspect and copy judicial records and documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). The public has a First Amendment right of access to any judicial proceeding or record "(1) that 'has historically been open to the press and general public'; and (2) where 'public access **plays a significant positive role in the functioning of the particular process in question.'"** *Courthouse News Serv. v. Shaefer*, 2 F.4th 318, 326 (4th Cir. 2021) (emphasis added) (quoting *Press-Enter.*

*Co. v. Superior Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 8-10 (1986)).  The

origin of this right lies in the constitutional clauses guaranteeing freedom of speech

and of the press.  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575-78

(1980) (right of public access to criminal trials stems from the First Amendment

guarantees of speech, press, and assembly); *Level 3 Commc'ns, LLC v. Limelight

Networks, Inc.*, 611 F. Supp. 2d 572, 577 (E.D. Va. 2009).  The Supreme Court has

explained that this right of access is rooted in the right of the public to view trials:

> The Bill of Rights was enacted against the backdrop of the long history
> of trials being presumptively open. Public access to trials was then
> regarded as an important aspect of the process itself…. In guaranteeing
> freedoms such as those of speech and press, the First Amendment can
> be read as protecting the right of everyone to attend trials so as to give
> meaning to those explicit guarantees. "[T]he First Amendment goes
> beyond protection of the press and the self-expression of individuals to
> prohibit government from limiting the stock of information from which
> members of the public may draw."

*Richmond Newspapers, Inc.*, 448 U.S. at 575-76 (quoting *First Nat'l Bank of

Boston v. Bellotti*, 435 U.S. 765, 783 (1978)).

The Fourth Circuit has further explained that "the right of access to

documents" is "a necessary corollary of the capacity to attend the relevant

proceedings" and "that summary judgment is an adjudication that serves as a

substitute for trial."  *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014)

(quotations omitted).

Mandamus is an extraordinary remedy. *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 289 (4th Cir. 2013). A petitioner has a high bar to obtain mandamus: "[t]o successfully obtain mandamus relief, a petitioner must show that "he has a clear and indisputable right to the relief sought," and "there are no other adequate means to attain the relief he desires." *Id.*

## PROCEDURAL BACKGROUND

This case began at the district court on September 21, 2007. J.A. 009. The parties consented to the jurisdiction of a magistrate judge, and the case was assigned to Magistrate Judge John F. Anderson. *See* J.A. 072-91, J.A. 010. On June 11, 2010, Judge Anderson granted in part the parties' Joint Motion for Leave to File Documents Under Seal, J.A. 104-05, and ordered that the parties could temporarily "file under seal any exhibits to their memoranda in support of their motions for summary judgment that were designated as confidential under the terms of the protective order." J.A. 104. Judge Anderson set a deadline of August 20, 2010, for any party to move to maintain any exhibits under seal. J.A. 105. On July 12, 2010, the Plaintiff, Jon Oberg, filed a motion for summary judgment and several documents under seal. *See* J.A. 046.

On August 13, 2010, Judge Anderson stayed "'all proceedings in this action relating to pending motions and the trial' so the parties could engage in settlement negotiations." Op. 5 (quoting J.A. 106). He further ordered that "[w]hile this

4

matter is stayed no pleadings shall be filed other than those related to the resolution

of claims by the parties." J.A. 106. Thus, Judge Anderson's order prevented the

parties from moving to permanently seal documents by the court's August 20,

2010, deadline. J.A. 171. On October 18, 2010, Judge Anderson further ordered

"that the stay ordered by the court on August 13, 2010 (Docket no. 558) shall

continue until further order of the court." J.A. 108.

The Parties settled on October 20, 2010. J.A. 141-53. On October 22, 2010,

while the stay was still in place, Judge Anderson dismissed the action against

Nelnet with prejudice. J.A. 110. On November 18, 2010, Judge Anderson closed

the case. J.A. 064.

Over twelve years later, on March 31, 2023, Michael Camoin, a nonparty,

wrote to the district court requesting copies of the documents that the Plaintiff had

filed under seal in 2010. J.A. 116. The court treated this pro se letter as a motion

requesting the documents and docketed it. J.A. 066. Nelnet opposed unsealing the

documents. J.A. 128-53.

On July 3, 2023, Judge Anderson denied Camoin's motion. J.A. 169-73.

Judge Anderson noted that he "never considered or ruled on the motions for

summary judgment and opposition that are relevant to this motion." J.A. 170. He

also confirmed that Nelnet did not miss the August 20, 2010, deadline for motions

to maintain the seal because his August 13, 2010, order prevented the filing of any

pleadings other than those related to resolution of the case. J.A. 171. Thus, "[t]o file a motion to maintain under seal after August 13, 2010 but before August 20, 2010 would have been to disregard this explicit directive from the court." J.A. 171.

Judge Anderson held that Camoin "has no common law or First Amendment right to access the sought documents and portions of documents" and that "[t]he mere filing of a document does not trigger the guarantee of access." J.A. 171. This is because "when the case is dismissed prior to the consideration and disposition of the motion for summary judgment, that motion plays no adjudicative role in the case, and the motion and attached exhibits have not attained the status of judicial documents to which a constitutional or common law presumption of public access might attach." J.A. 172 (quotations omitted).

The panel reversed Judge Anderson. Op. at 7-8, ECF No. 46. The panel first determined that Camoin did not have standing to appeal the district court's order because he "did not participate in the original sealing proceedings between the parties," and "he requested to access the documents long after the litigation was over." Op. at 12. The panel noted that the Fourth Circuit has "never applied nonparty appellate standing when the nonparty's only involvement occurred after the original proceedings had terminated." Op. at 12. And "[g]iven that this doctrine is an exception to an otherwise bright-line jurisdictional rule," the panel "decline[d] to extend it to this context." Op. at 12. The panel nonetheless took

6

mandamus jurisdiction, Op. at 12, which the panel acknowledged "may only issue in extraordinary circumstances."  Op. at 19.

On the merits, the panel concluded that Camoin has a First Amendment right to access the sealed documents.  Op. at 18.  According to the panel, this Court's "precedents are clear that the First Amendment right of access to summary judgment materials does not depend on judicial resolution of the summary judgment motion or judicial reliance on the documents in resolving the motion." Op. at 16.

## ARGUMENT

Contrary to *In re Policy Managment*, the panel rejected the holding by the district court that documents filed under seal in conjunction with a motion for summary judgment, that the court did not rule on prior to settlement, played "no adjudicative role" in the case.  In rejecting the district court's holding, the panel relied on cases in which the motions for summary judgment were actually decided by the district court.  The panel improperly extended the holding of those cases to encompass cases where the summary judgment motions were not decided.  The panel erred by relying on general language in one factual setting and expanding the right of access to a materially different fact pattern.  In doing so, the panel did not consider whether access to documents that played no adjudicative role in the proceeding is consistent with the purposes underlying the right to access.  The

precedents establishing those policies are clear that the public has no right to access documents that play no role in the adjudicative process.

In determining whether a document that is filed under seal is subject to the First Amendment's right of access, courts consider two factors: (1) "'whether the place and process have historically been open to the press and general public,' and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (*quoting Press-Enter. Co.*, 478 U.S. at 8–10).

It is a huge leap to extend a public right of access to documents filed in conjunction with a motion seeking judicial action where the motion is ruled upon to a public right of access solely because a document was filed in conjunction with a motion. There is an essential step that is absent when the motion is not decided: a finding that public access plays a significant positive role in the summary judgment process. The public plays no role in the summary judgment process when summary judgment is neither granted nor denied.

The panel's opinion is premised on the novel theory that the mere act of filing a document in support of a motion for summary judgment automatically means that the public is entitled to access the document. Relying on this Court's decision in *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988), the panel erroneously held that "the First Amendment right attaches '[o]nce the

8

documents are made part of a [summary judgment] motion' and no later." Op. at

16. In so ruling, however, the panel ignored a key qualification identified by the

*Rushford* Court. The *Rushford* Court noted that its holding regarding access to

documents filed in conjunction with summary judgment motions was based on the

fact that "summary judgment adjudicates substantive rights and serves as a

substitute for a trial." *Rushford*, 846 F.2d at 252. Therefore, key to the *Rushford*

decision was that a trial is essentially equivalent to a summary judgment **decision**.

*See also Doe*, 749 F.3d at 266 ("[S]ummary judgment is an adjudication that serves

as a substitute for trial.") (quotations omitted).

Of course, a summary judgment **motion** does not adjudicate anything, much

less substantive rights, and a motion does not serve as a substitute for a trial. Only

the decision of the court on the motion adjudicates substantive rights and serves as

a substitute for a trial. Therefore, the right to access does not exist without the

adjudication of the parties' rights. In fact, the *Rushford* court emphasized that

"counsel for The New Yorker even acknowledged that if the case had gone to trial

and the documents were thereby submitted to the court as evidence, such

documents would have been revealed to the public and not protected under the

Order." *Id.*

The district court's Order denying Mr. Camoin's request to unseal the

documents recognized the significance of the court not ruling on the motions for

9

summary judgment and cited several cases in support of its decision.  J.A. 171.

Among those cases was *In re Policy Management*, which the court cited for the

proposition that the "mere filing of a document does not trigger the guarantee of

access."  J.A. 171.

The panel attempts to distinguish *In re Policy Management* on the grounds

that it involved a motion to dismiss.  Op. 18 n.10.  In a footnote, the panel noted

that the documents at issue in *In re Policy Management* were attached to a motion

to dismiss.  While *In re Policy Management* involved a motion to dismiss, as

opposed to a motion for summary judgment, it is significant that this Court in *In re*

*Policy Management* highlighted that "a party can file materials outside the

pleadings while seeking court action on a motion to dismiss" and that "the court

can rule on the motion without considering the materials."  *In re Pol'y Mgmt. Sys.*

*Corp.,* 1995 WL 541623, at *4.  In that instance, this Court held that documents

that are never considered by a court play no role in the adjudicative process:

> Because documents filed with a motion to dismiss that are excluded by
> the court do not play any role in the adjudicative process, we find that
> the documents essentially retain their status as discovery materials and
> therefore are not subject to the First Amendment guarantee of access.
> Access to those documents was therefore denied.  Moreover, public
> access to documents that a court did not consider would not 'play a
> significant positive role in the functioning of the particular process in
> question.'"

*Id.* (quoting *Press-Enter. Co.*, 478 U.S. at 8).  Indeed, that is exactly what the

district court ruled in this case.

The panel's attempt to distinguish *In re Policy Management* is also undercut by its reliance on *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)* for the proposition that "documents 'filed with the objective of obtaining judicial action or relief' do 'play a role in the adjudicative process.'"  Op. at p. 18, n.10 (quoting *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 290-91).  The panel's reasoning is flawed because a motion to dismiss, like a motion for summary judgment, by its very nature is filed with the objective of obtaining judicial action.  The panel's reasoning suggests that any documents filed with a motion seeking judicial action are per se subject to the public's right of access.  This Court, in *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)* was clear that "documents filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights."  *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 290.  And this Court, in *In re Policy Management*, ruled that there was no such right of access because the documents in question were not considered by the court.  *In re Policy Management*, 67 F.3d at *4.  Thus, the cited language from *Order Pursuant to 18 U.S.C. Section 2703(D)* actually supports the district court's holding that there is no right to access documents submitted in connection with a motion seeking

judicial action or relief that is not ruled upon by the district court.[1]

The panel's rationale in footnote 10 makes it clear that there is no difference for the purpose of a public right of access analysis between documents filed as part of a motion to dismiss and documents filed as part of a summary judgment motion when in each instance the court does not consider the sealed documents. In either instance, the documents remain more like discovery documents as opposed to a substitute for trial. *Id.*

In assessing the impact of these cases, it is important to recall the rationale underlying the public right to access. The right of access to documents filed in a case is premised on the idea that judicial proceedings must be as open as possible so that the public can hold the courts accountable and "have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). Such access ensures the integrity of the judiciary and promotes the trustworthiness of the judicial process. *Doe*, 749 F.3d at 266. But access to documents that are not considered by the court as part of the judicial process does not promote these important goals. As a result, this Court should grant this petition for rehearing en banc to correct the error of the panel's decision.

---

[1] The observation in footnote 10 that had the *In re Policy Management* court converted the motion to dismiss into a summary judgment motion the right of access would apply does not resolve the matter unless and until the court rules on the motion.

Indeed, both the panel and Camoin recognize that the district court's holding that the documents at issue played no role in the adjudicative process poses an existential threat to Camoin's case. Both the panel and Camoin go to extraordinary lengths to argue that, contrary to the district court's holding, the documents **could have played a role** in the proceedings before the court sufficient to justify access. Camoin argued in his brief on appeal that "[i]n these circumstances, the public **could fairly infer** that the strength of the arguments and evidence set forth in the summary judgment papers—and the magistrate judge's reaction to them at the hearing—influenced the decision to settle and the terms of the settlement. As the Courts held in the *Courthouse News* cases, the public has a right to assess how the court filings influenced the resolution of the dispute." Br. at 31, ECF No. 16 (emphasis added). The panel adopted Camoin's speculative theory:

> Nelnet and Brazos argue that the original parties settled in response to the district court's finding that Oberg filed to preserve certain evidence. Camoin, by contrast, notes that they may have settled because of the arguments and evidence presented in the summary judgment proceedings. But without access to the sealed materials, it is impossible for the public to know which view is correct.

Op. at 18.

Neither Camoin nor the panel offer any factual basis for this theoretical suggestion. Camoin offered absolutely no evidence to suggest that these documents were mentioned at the summary judgment hearing or played any role in the decision to settle or the terms of the settlement. No citations to the transcript of

13

the oral argument on the motions are offered.  No analysis of what arguments the

sealed documents related to was undertaken.  The notion that the public "could

fairly infer" that this happened is created out of thin air.

Most importantly, Camoin's unsupported theory and the panel's holding flies

in the face of Judge Anderson's ruling on the letter/motion.  Judge Anderson, who

also heard the summary judgment arguments, specifically stated that the sealed

documents played no adjudicative role in the case:

> Judicial records and documents that serve an adjudicative role in the
> case have a presumption of access…. However, a document must play
> a relevant and useful role in the adjudication process for [] either the
> First Amendment or common law rights of public access to attach….
> Here, movant seeks exhibits attached to a consolidated opposition to
> motions for summary judgment. **These motions were never
> considered or decided by the court, and they had no adjudicative
> role in this case**.

J.A. 171-72 (emphasis added).  As the presiding judge, Judge Anderson certainly

knew whether the documents could conceivably have played any such adjudicative

role.  His ruling is abundantly clear that the documents in question were not

relevant or useful to the process.  Given that Camoin offers no facts to dispute the

district court's explicit findings, they stand unrebutted.

The panel's opinion in this regard is equally flawed.  The panel did nothing

more than endorse Camoin's speculative theory that somehow or other the parties

settled the case before the motion for summary judgment was decided "because of

the arguments and evidence presented in the summary judgment proceedings." Op.

14

at 18.  The only "evidence" offered by Camoin or the panel to support this argument is that the argument on the summary judgment motions was held on July 30, 2011, and that the proceedings were stayed on August 13, 2011.  This temporal relationship ignores that the district court granted Nelnet's spoilation motion on August 6, 2011.  That Order and its potentially significant impact on the jury breaks any temporal relationship between the summary judgment arguments and the Order staying the proceedings in anticipation of a settlement in the case.  Thus, the panel's speculation in this regard hardly justifies using the remote possibility that the documents filed by Plaintiff Oberg in his opposition to the Defendants' summary judgment motions were the impetus that spurred the Defendants to settle the case.

## CONCLUSION

The panel created a novel rule that documents that were never considered by a district court and played no role in the adjudicative process must nonetheless be unsealed simply because they were filed with a summary judgment motion.  The panel's decision conflicts with *In re Policy Management* and improperly intrudes on the authority of district courts to manage their cases.  Camoin has no First Amendment right to the sealed documents.  For that reason, the panel lacked mandamus jurisdiction, and Camoin's appeal should be dismissed.

Respectfully submitted,

/s/*Ronald S. Connelly*
Ronald S. Connelly
Larry S. Gondelman
Powers Pyles Sutter & Verville, PC
1250 Connecticut Ave., NW, Eighth Floor
Washington, DC 20036
Ron.Connelly@PowersLaw.com
Fax: (202) 785-1756
Tel: (202) 466-6550

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the type-volume limitations of Federal Rule of Appellate Procedure 35(b)(2)(A) because the document contains 3,750 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I also certify that the foregoing complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because the document was prepared using Microsoft Word 365 in 14-point Times New Roman font.

Dated: July 2, 2024                    /s/*Ronald S. Connelly*
                                       Ronald S. Connelly

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system.  All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

Dated: July 2, 2024                    /s/*Ronald S. Connelly*
                                       Ronald S. Connelly